O

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISH NETWORK LLC, et al. ) | CASE NO. SACV 12-1097 DOC (JPRx) |
| Plaintiffs, ) | |
| v. ) | O R D E R GRANTING PLAINTIFF'S MOTION FOR |
| NEW ERA ELECTRONICS CORP., et) al, ) | DEFAULT JUDGMENT |
| Defendants. ) | |
| _____ ) | |

Before the Court is a Motion for Default Judgment (Dkt. 28) filed by DISH Network LLC, EchoStar Technologies LLC, and NagraStar LLC (collectively, "DISH Network" or "Plaintiff"), unopposed by defaulted Defendants New Era Electronics Corp., Satellite Dish Expert, Inc., Swyft Products LLC, Johnny Tran, and Rene Valdez d/b/a FTA Republic (collectively, "Defendants"). The Court finds this matter appropriate for decision without hearing.  After considering the moving papers and supporting documents, the Court GRANTS Plaintiff's Motion.

## I.    Background

Plaintiff DISH Network broadcasts copyrighted programming to approximately 14

million subscribers throughout the United States, *see* First Amended Complaint ("FAC") (Dkt. 17) ¶ 14, and Defendants distribute receivers, hubs, and modules designed to allow people to pirate that material by circumventing DISH Network's security encryption.  Mot. at 1. Plaintiff brought claims against Defendants for violations of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201(a)(2), and the Federal Communications Act ("FCA"), 47 U.S.C. § 605(e)(4).[1]

### A.     Facts Alleged by Plaintiff

Plaintiff uses a complex security system in order to prevent unauthorized access to the copyrighted programming that it broadcasts on the DISH Network platform. FAC ¶¶ 15-24.  The security system functions by encrypting Plaintiff's satellite signal, then providing legitimate customers with the equipment necessary to decrypt the signal.  *Id.*

Defendants purchased "Sonicview" receivers and iHubs from Sonicview USA, Inc., or related businesses and then re-sold the devices to Defendants' customers. FAC ¶¶ 32, 36, 38, 42. Sonicview receivers are capable of circumventing the DISH Network security system and intercepting DISH Network satellite television programming. *Id.*  ¶ 36. Sonicview receivers have software and hardware components that are primarily designed and intended for circumventing Plaintiff's NagraStar conditional access system and decrypting DISH Network's satellite signal without authorization. *Id.*  ¶ 37. Among those components is proprietary code from a DISH Network access card, a decryption algorithm used in DISH Network's security system, and data supporting a graphical user interface that is used when configuring Sonicview receivers for piracy. *Id.*   Sonicview receivers also contain explicit support for add-on adapters and modules that similarly have no commercial purpose or use other than facilitating DISH Network piracy.  *Id.*

These adapters include receivers known as the "iHub," "SV Lan," or "WizHub" (collectively, the "iHub"). FAC ¶¶ 38, 42. The iHub enables Sonicview receivers to access an "internet key sharing" ("IKS") server and obtain control words used to decrypt DISH Network

---

[1] This motion is only brought against the defaulted Defendants.  Defendants Allstar Wholesales, Inc. and Allen Chen filed an answer, and proceedings against them are ongoing.

programming without authorization. *Id.* ¶ 38.  Defendants supply a "serial number" with the iHub that serves as a passcode to access the IKS server. *Id.*  The iHub is impractical for performing any legitimate application. *Id.*

Defendants New Era Electronics Corp., Satellite Dish Expert, Inc., and Swyft Products LLC (collectively, "New Era Defendants") also distribued the A-1 module. FAC ¶¶ 33, 39, 43. The A-1 module enables Sonicview high-definition receivers to pirate DISH Network's high definition programming, which is broadcast using a unique combination of 8PSK modulation and Turbo forward error correction. *Id.* ¶ 39. The A-1 module has no legitimate application and is primarily designed and used to facilitate piracy of DISH Network's high-definition programming. *Id.* ¶¶ 39, 44.

### i.     New Era Defendants and Johnny Tran

Since July 5, 2009, Satellite Dish Expert trafficked in at least 6,296 Sonicview receivers. Boyle Decl. (Dkt. 28-3) ¶¶ 19-20.  New Era Electronics trafficked in at least 10,568 Sonicview receivers and 8,798 iHubs. *Id.* ¶¶ 19, 21.  Swyft Products trafficked in at least 644 Sonicview receivers. *Id.* ¶¶ 19, 22.  Defendant Johnny Tran is an officer, director, and owner of all of these New Era Defendants, running day-to-day operations, making final decisions regarding their operations, selecting products to be sold, and receiving benefits from the trafficking of piracy devices through them.  FAC ¶ 33.  Plaintiff alleges that Tran is the "guiding spirit" and "central figure" behind these companies.  *Id.*

### ii.     Rene Valdez

Since July 5, 2009, Rene Valdez (d/b/a FTA Repulbic) trafficked in at least 275 Sonicview receivers.  Boyle Decl. ¶¶ 19, 23.  Valdez also trafficked in at least 10 iHubs. *Id.* ¶¶ 19, 23.

### B.     Plaintiff's Motion for Default

On July 5, 2012, Plaintiff filed this lawsuit against Defendants to enjoin Defendants' piracy-related activities and to recover money damages.  *See* FAC.  Despite proper service, Defendants have never appeared or responded. On October 1, 2012, Default was entered by the

clerk against Defendants.  Entry of Default (Dkt. 31).  On Aug 31, 2012, Default was entered by the clerk against Defendant TDI.  Entry of Default (Dkt. 27).  Defendants are not infants, incompetent persons, or on active duty in the military or otherwise covered by the Service Members' Civil Relief Act.  Boyle Decl. ¶¶ 7-8, 10-12, 14-18.  Plaintiff now moves for Default Judgment.

In attached declarations and exhibits to the Motion, Plaintiff provided evidence to show how the relevant technology worked and to identify the number of acts that established Defendants' liability.  Included in the declarations and exhibits is the declaration of Gregory Duval, COO of NagraStar, the supplier of the proprietary technology used to encrypt Plaintiff's signal.  *See* Duval Decl.  The declaration of Joseph Boyle, Plaintiff's counsel, includes collections of Sonicview invoices showing the number of pirating devices purchased or received by Defendants.  Boyle Decl. Exs. 9-12.

## II.    Legal Standard

Federal Rule of Civil Procedure 55 provides that the Court may, in its discretion, order default judgment following the entry of default by the Clerk.  Fed. R. Civ. P. 55(b).  Local Rule 55 sets forth procedural requirements that must be satisfied by a party moving for default judgment.  Upon entry of default, the well-pleaded allegations of the complaint are taken as true, with the exception of allegations concerning the amount of damages.  *See, e.g.*, *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977).  However, "necessary facts not contained in the pleading, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.,* 980 F.2d 1261, 1267 (9th Cir. 1992).  Where the pleadings are insufficient, the Court may require the moving party to produce evidence in support of the motion for default judgment.  *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).  A court may not enter a default judgment against an unrepresented minor, incompetent person, or person in military service.  Fed. R. Civ. P. 55(b)(2); 50 App. U.S.C. § 520.

When a party applies for default judgment, "the court may conduct hearings or make

referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."  Fed. R. Civ. P. 55(b)(2).  Damages may be set at the default judgment stage without a hearing provided "the amount claimed is a liquidated sum or capable of mathematical calculation." *Davis v. Fendler*, 650 F. 2d 1154, 1161 (9th Cir. 1981).

### III.    Discussion

#### A.    The Court's Discretion to Grant Default Judgment

In evaluating whether to enter a default judgment, courts consider seven factors: "(1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).   In applying the *Eitel* factors to the facts at issue here, the Court chooses to exercise its discretion in GRANTING Plaintiff's Motion for Default Judgment.

#### 1.    The Possibility of Prejudice to Plaintiff

This factor requires the court to consider the harm to Plaintiff if a default judgment is not granted.  As described in section I of this Order, Defendants' past misconduct and current failure to litigate this case indicate that they are highly unlikely to correct past misbehavior or otherwise compensate Plaintiff without a default judgment by the Court.  Without this Court's intervention, Plaintiff will have suffered millions of dollars worth of harm at the hands of Defendants without any compensation and with no injunctive relief.  Given the likely harm to Plaintiff, the evidence before this Court establishes that Plaintiff "will be denied the right to adjudicate its claims and obtain relief if default judgment is not granted." *Autodesk, Inc. v. Flores*, 2011 WL 337836, at *6 (N.D. Cal. Jan. 31, 2011) (granting default judgment on a DMCA claim and awarding statutory damages).

### 2 & 3.   The Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint

These two factors require Plaintiff to state a claim on which it can recover.  The Court considers each claim in turn.  Because each is established, and because the complaint sufficiently stated the Court's jurisdictional grounds, these two factors strongly support the granting of a default judgment.

### i.      DMCA

Section 1201(a)(2) of the DMCA prohibits "manufactur[ing], import[ing], offer[ing] to the public, provid[ing], or otherwise traffic[king] in any technology, product, service, device, component, or part thereof, that—

> (A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected [by copyright];
>
> (B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected [by copyright]; or
>
> (C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing a technological measure that effectively controls access to a work protected [by copyright].

17 U.S.C. § 1201(a)(2).

In order to establish liability under this section, Plaintiff must establish that Defendants violated one of the three prongs. *See* 17 U.S.C. § 1201(a)(2). Moreover, "potential lawful or fair use is not a defense to § 120(a) when its requirements are established." *DISH Network, L.L.C. v. Sonicview USA, Inc.*, 2012 WL 1965279, at *7 (S.D. Cal. May 31, 2012) (finding that Sonicview itself violated the DMCA by making and selling Sonicview receivers and iHubs); *see also Realnetworks, Inc. v. DVD Copy Control Ass'n,* 641 F.Supp. 913, 942 (N.D.Cal.2009); *Sony Computer Entm't Am., Inc. v. Divineo, Inc.,* 457 F.Supp.2d 957, 965 (N.D.Cal.2006)

("[D]ownstream customers' lawful or fair use of circumvention devices does not relieve [the defendant] from liability for trafficking of such devices under DMCA .").

Plaintiff alleges that Sonicview receivers, iHubs, and the A-1 module are designed and produced to circumvent DISH Network's security system, and used primarily for that purpose. Mot. at 5-8. Plaintiffs further allege that each of the Defendants trafficked in these devices and offered them to the public for sale. Plaintiff's well-pled allegations, taken as true for the purposes of this motion, establish that the Defendants violated section 1201(a)(2) of the DMCA.

### ii.        FCA

Section 605(e)(4) of the FCA states that the statute is violated where:

> Any person who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for any other activity prohibited by subsection (a) of this section ....

47 U.S.C. § 605(e)(4). Subsection (a) of § 605 prohibits people from receiving or assisting in receiving, without authorization, subscription-based satellite television programming like DISH Network's. 47 U.S.C. § 605(a). A violation of § 605(e)(4) also gives rise to a civil cause of action in favor of "[a]ny person aggrieved by [such] violation." 47 U.S.C. § 605(e)(3)(A).

Defendants' distribution of Sonicview receivers, iHubs, and A-1 modules violates § 605(e)(4) because those products are "designed and produced to circumvent DISH Network's security system and have no other commercially significant purpose." *Sonicview USA, Inc.*, 2012 WL 1965279, at *10. For the same reasons, these products are "primarily of assistance" in decrypting DISH Network's satellite signal without authorization. *Id.* In addition, Defendants' distribution of receivers, iHubs, and A-1 modules is prohibited by the FCA because "they are intended for use in receiving DISH Network's satellite signal without authorization." *Id.*

### iii.        Jimmy Tran's Liability for New Era Defendants' Violations

In the Ninth Circuit, "a corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." *The Comm. for Idaho's High Desert, Inc. v. Yost,* 92 F.3d 814, 823 (9th Cir.1996) (quoting *Transgo, Inc. v. Ajac Transmission Parts Corp.,* 768 F.2d 1001, 1021 (9th Cir.1985)). In addition, "[c]ases which have found personal liability on the part of corporate officers have typically involved instances where the defendant was the 'guiding spirit' behind the wrongful conduct ... or the 'central figure' in the challenged corporate activity." *Davis v. Metro Productions, Inc.,* 885 F.2d 515, 524 n. 10 (9th Cir.1989) (internal citations omitted). This principle has been applied by courts in DMCA and FCA cases. *See Sonicview USA, Inc.*, 2012 WL 1965279, at *10 (citing *Bangkok Broad. & T.V. Co., Ltd. v. IPTV Corp.,* 742 F.Supp.2d 1101, 1114 (C.D.Cal.2010) (same for copyright case)).

Here, Plaintiff alleges that Johnny Tran is an officer, director, and owner of all of these New Era Defendants, running day-to-day operations, making final decisions regarding their operations, selecting products to be sold, and receiving benefits from the trafficking of piracy devices through them.  FAC ¶ 33.  Plaintiff alleges that Tran is the "guiding spirit" and "central figure" behind these companies.  *Id.*

Accordingly, the Court finds that Johnny Tran is individually liable for the New Era Defendants' distribution of Sonicview receivers, iHubs, and A-1 modules in violation of the DMCA and FCA. *See Sonicview USA, Inc.*, 2012 WL 1965279, at *11 (holding individual Sonicview chief officers liable for Sonicview's DMCA and FCA violations).

### 4.     The Sum of Money at Stake

Pursuant to the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Cal. Sec. Cans.,* 238 F.Supp.2d at 1176; *see also Eitel,* 782 F.2d at 1471–72.  The DMCA provides for "statutory damages for each violation of section 1201 in the sum of not less than $200 or more than $2,500 per act of circumvention, device, product, component, offer, or performance of service, as the court considers just." 17 U.S.C. § 1203(c)(3)(A). The FCA authorizes a prevailing plaintiff to recover

statutory damages for "each violation" of section 605(e)(4) "in a sum not less than $10,000, or more than $100,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). However, Plaintiff states that it is willing to forego FCA damages if the Court awards the minimum amount of statutory damages due pursuant to the DMCA: $200 per violation for a total of $5,318,200 across all Defendants. *See* Mot. at 11.

Given Defendants' infringing sale of large, commercial quantities of pirating devices, and their failure to comply with the judicial process or to participate in any way in the present litigation, Plaintiff is entitled to a judgment reflecting the statutory damages set by the DMCA.

### 5 & 6.   The Possibility of a Dispute Concerning Material Facts and Whether the Default Was Due to Excusable Neglect

These two factors require the Court to consider whether it is highly likely that there would be a dispute as to material facts and whether Defendants' failure to litigate is the result of excusable neglect.  The facts of this case indicate that the answer is "no."  Defendants could not likely dispute material facts regarding the trafficking of piracy products because Plaintiff has shown actual invoices and sales records reflecting Defendants' receipt of those products. Defendants' failure to litigate is not excusable given that Defendants received sufficient notice and yet failed to answer.  Thus, these factors strongly support the granting of a default judgment.

### 7.  The Public Policy Favoring Decisions on the Merits

This factor indicates that, for public policy reasons, courts prefer to rule on the merits. However, since every other *Eitel* factor militates in favor of default judgment, the Court chooses to exercise its discretion in GRANTING Plaintiff's motion for default judgment.

### B.     Damages

Plaintiff only seeks minimum statutory damages pursuant to the DMCA.  That law provides for "statutory damages for each violation of section 1201 in the sum of not less than $200 or more than $2,500 per act of circumvention, device, product, component, offer, or performance of service, as the court considers just." 17 U.S.C. § 1203(c)(3)(A). Courts may award statutory damages for each device sold. *Sonicview USA, Inc.*, 2012 WL 1965279, at *13

(awarding $200 for each device sold) (citing *Sony Computer Entm't America, Inc. v. Filipak,* 406 F.Supp.2d 1068, 1074. (N.D.Cal.2005) ("[Section] 1203(c)(3)(A) authorizes a separate award of statutory damages for each device sold"); *Craigslist, Inc. v. Naturemarket, Inc.,* 694 F.Supp.2d 1039, 1064 (N.D.Cal.2010) (treating each unit sold as a violation)).

Here, Plaintiff seeks damages for the number of pirating devices—including Sonicview receivers, iHubs, and A-1 modules—trafficked by the Defendants. Since July 5, 2009, Satellite Dish Expert trafficked in at least 6,296 Sonicview receivers, resulting in 6,296 violations ($1,259,200). New Era Electronics trafficked in at least 10,568 Sonicview receivers and 8,798 iHubs, resulting in 19,366 violations ($3,873,200). Swyft Products trafficked in at least 644 Sonicview receivers, resulting in 644 violations ($128,800). Defendant Johnny Tran is individually liable for all of these New Era Defendants, and so would be jointly and severally liable for $5,261,200.

Since July 5, 2009, Rene Valdez (d/b/a FTA Repulbic) trafficked in at least 275 Sonicview receivers and 10 iHubs, resulting in 285 violations ($57,000).

## C.   Injunctive Relief

Plaintiff seeks a permanent injunction enjoining Defendants' unlawful conduct. Section 1203(b)(1) of the DMCA authorizes the Court to "grant ... permanent injunctions on such terms as it deems reasonable to prevent or restrain a violation." Permanent injunctive relief is appropriate where a plaintiff demonstrates: (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardships favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *eBay,Inc. v. MercExchange, LLC*, 547 U.S. 388, 391-92 (2006).

The Court finds that under the facts of this case, Plaintiff is entitled to a permanent injunction. The trafficking of piracy devices has irreparably harmed Plaintiff's ability to control its business reputation and has affected Plaintiff's customer goodwill. *See Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) ("intangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable

harm").  There is no adequate remedy at law to address this ongoing damage and irreparable harm.  Further, the balance of hardships weighs in favor of Plaintiff, since an injunction will merely prohibit Defendants from ongoing unlawful activity.  Finally, the public interest is served when copyright protections are enforced.

Accordingly, the Court ORDERS the following injunctive relief.

DEFENDANTS ARE ENJOINED FROM:

• manufacturing, importing, offering to the public, or otherwise trafficking in Sonicview receivers, Sonicview dongles (including iHub, New Link, SV Lan, and Wizhub, A-1 modules, or any other technology or part thereof used in circumventing the DISH Network security system or intercepting DISH Network programming;

• circumventing or assisting others in circumventing DISH Network's security system, or otherwise intercepting or assisting others in intercepting DISH Network's signal;

• testing, analyzing, reverse engineering, manipulating, or otherwise extracting codes, data, or information from DISH Network's satellite receivers, smart cards, satellite data stream, or any other part or component of DISH Network's security system.

Additionally, Defendants are ordered to turn over to Plaintiff all Sonicview receivers, iHubs, and A–1 modules in their possession for destruction in accordance with 17 U.S.C. § 1203(b)(6). *See Sonicview USA, Inc.*, 2012 WL 1965279, at *14 (citing *Autodesk, Inc. v. Flores*, 2011 WL 337836, at *11 (N.D.Cal. Jan.31, 2011); *DISH Network, L.L.C. v. Sonicview USA, Inc.*, 2012 WL 1965279 (S.D. Cal. May 31, 2012)).

**IV.    Disposition**

For the foregoing reasons, Plaintiff's Motion for a Default Judgment is GRANTED.

Pursuant to Fed. R. Civ. P. 54(b), Plaintiffs have shown that there is no just reason to delay entry of a final judgment against Defendants New Era Electronics Corp., Satellite Dish

Expert, Inc., Swyft Products LLC, Johnny Tran, and Rene Valdez d/b/a FTA Republic.

The Court hereby:

1. GRANTS Plaintiff's Motion for an entry of Default Judgment as to its DMCA and FCA claims against defaulted Defendants New Era Electronics Corp., Satellite Dish Expert, Inc., Swyft Products LLC, Johnny Tran, and Rene Valdez d/b/a FTA Republic;

2. GRANTS Plaintiffs' request for the following statutory damages:

    A.  $1,259,200 as to Satellite Dish Expert, Inc;

    B.  $3,873,200 as to New Era Electronics, Corp.;

    C.  $128,800 as to Swyft Products LLC

    D.  Johnny Tran is individually liable for the statutory damages as to Satellite Dish Expert, Inc., New Era Electronics Corp., and Swyft Products LLC in the aggregate amount of $5,261,200;

    E. $57,000 as to Rene Valdez (d/b/a FTA Republic);.

3. GRANTS Plaintiff's request for a Permanent Injunction as described in section III(C) of this Order;

4. GRANTS Plaintiff's request to dismiss its Third Claim for a violation of the Electronic Communications and Privacy Act, 18 U.S.C. §§ 2511(1)(a), 2520, with prejudice as to the above defendants.


The Court retains jurisdiction over this action for the purposes of enforcing this final judgment and permanent injunction against Defendants New Era Electronics Corp., Satellite Dish Expert, Inc., Swyft Products LLC, Johnny Tran, and Rene Valdez d/b/a FTA Republic, as well as

///

///

///

adjudicating all claims asserted against the remaining defendants, Allstar Wholesales, Inc. and Allen Chen.

IT IS SO ORDERED.

DATED: September 27, 2013

_____
DAVID O. CARTER
United States District Judge

13